IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (AKRON)

| | | |
|---|---|---|
| J. ENDRES, | : | **Civ. No. 5:17−cv−02408−SL** |
| | : | |
| Plaintiff, | : | JUDGE LIOI |
| | : | |
| v. | : | MAGISTRATE JUDGE LIMBERT |
| | : | |
| NORTHEAST OHIO MEDICAL UNIVERSITY, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF ENDRES' MOTION FOR LEAVE
TO FILE FIRST AMENDED COMPLAINT**

Plaintiff J. Endres, by and through undersigned counsel (who are replacing original counsel) hereby moves the Court, pursuant to Fed.R.Civ.P. 15, for leave to amend his Complaint to (1) add a cause of action under the Rehabilitation Act of 1973 based on the same facts and arising from the same transaction as the pending cause under the Americans with Disabilities Act (ADA); (2) eliminate a claim against Defendant Gershen, University President, in his personal or individual capacity; (3) delete legal argument from the section describing causes of action; (4) establish that Defendant Northeast Ohio Medical University ("NEOMED") is named under the Rehabilitation Act and ADA, rather than 42 U.S.C. § 1983; (5) invoke *Ex parte Young*, 209 U.S. 123, 159 (1908), as the basis for naming the University Board of Trustees, President, and Chief Student Affairs Officer in their official capacities; (6) clarify the alleged purpose and effect of choosing an academic, rather than disciplinary, University process for handling the charge that Plaintiff cheated on an examination; and (7) correct typographical errors or omissions in

allegations which detracted from comprehension or completeness.  Defendants will not be prejudiced by these amendments, and the case is in its infancy so that undue delay has not occurred.  To the contrary, the amendments likely address most, if not all, of the Motion for Judgment on the Pleadings anticipated to be filed by Defendants no later than February 23, 2018, and have been sought within a week of Plaintiff substituting counsel.

    A just resolution of the allegations before the Court necessitates granting leave to make these amendments.  A First Amended Complaint has been lodged with the Court as Exhibit A to this Motion.

**MEMORANDUM IN SUPPORT OF PLAINTIFF ENDRES'
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

I. **Statement of Issue to Be Decided**

The main issue is whether Plaintiff should be permitted to amend his Complaint in light of the liberal approach to Fed.R.Civ.P. 15 taken in the Sixth Circuit and the absence of any significant prejudice to Defendants. While the amendments would resolve several anticipated jurisdictional issues, such as the interplay between sovereign immunity and the Americans with Disabilities Act, the seeming naming in the original Complaint of a state instrumentality under 42 U.S.C. § 1983, and the bringing of a personal or individual capacity lawsuit against a University President who was not directly involved in the constitutional violations, they inflict no cognizable prejudice on Defendants.

II. **Summary of Argument**

The liberal approach to amending a Complaint under Fed.R.Civ.P. 15 taken in the Sixth Circuit serves the goal of resolving litigation on the merits rather than on procedural technicalities. As a substantive matter, this case raised at the outset two claims: deprivation of procedural due process and disability discrimination. Granting leave to amend would not change those claims, though it would permit Plaintiff to invoke the Rehabilitation Act as well as the Americans with Disabilities Act ("ADA").

Because the same facts are used for both the Rehabilitation Act and ADA claims, the amendment should relate back to the date of the original filing, thereby rendering the Rehabilitation Act claim timely. Bringing the two claims together also enables the Court to pretermit the issue of whether a state university may be sued for disability discrimination in federal court under the ADA because Congress exercised in a congruent and proportionate

1

manner its power to enforce the Fourteenth Amendment. The Eleventh Amendment is waived by receipt of the funds which trigger the Rehabilitation Act.

Ensuring that the Complaint does not name a state instrumentality under 42 U.S.C. § 1983 but reaches public officials under *Ex parte Young* cleans up another jurisdictional matter, as does naming the University President in only his official capacity. Adding allegations that establish Plaintiff's disability in a clearer fashion than the extensive quoted excerpts from his treating physician and expert opinions in the original Complaint is also appropriate. Similarly, connecting the dots between the Defendants' choice of an academic, rather than disciplinary, process to handle their accusation that Plaintiff cheated and both the procedural due process and disability discrimination claims will bring into better focus both claims.

### III.   Background

For most of his life Plaintiff has suffered from Attention Deficit Hyperactivity Disorder ("ADHD") and been prescribed Ritalin. During his studies at NEOMED he noticed that Ritalin's side effect of lethargy had become problematic, and he reduced the dosage without much success. He discussed with his doctor changing from Ritalin, a stimulant, to Strattera, a non-stimulant, and started taking the new medication. Unlike Ritalin, Strattera did not regulate the outward physical symptoms of ADHD, though it enabled him to concentrate, think clearly, and take tests.

During the period he was adjusting to the changed medication, he took an examination that was openly proctored and video recorded. He became fidgety and distracted, repeatedly and momentarily glanced toward another student's computer screen five feet away which NEOMED had set with an unchangeable low brightness, and seemed to be agitated. NEOMED alleged that he was cheating on the examination, used the ADHD symptoms to establish that cheating, and

relied on a statistical analysis comparing his and the other student's answers and concluding that he had to be cheating due to their similarity.

Because NEOMED channeled its accusations to an academic rather than disciplinary process, Plaintiff was denied adequate notice and a meaningful opportunity to defend himself initially, during an appeal, and at a rehearing. Ultimately, Plaintiff adduced testimony from his treating physician about the change in medication; expert opinions about his ADHD symptoms, including the distracting effect of a zoom-in and zoom-out function on the other student's computer; *a field test that demonstrated a student in his seat at the exam could not **possibly** glean from his glances the answers on the other student's computer screen;* and a thorough rebuttal of NEOMED's statistical analysis which revealed that more than half of the class had six or more identical right and wrong answers and his grade, 72, which was in the top 15% of the class, was significantly higher than the other student's 64.

Defendants excluded some of the exculpatory evidence and basically ignored the rest, hewed to their lay interpretation of Plaintiff's behavior without regard to his classic symptoms of ADHD, initially disregarded that the statistical analysis had been exposed as faulty and misleading and later slighted the poisoning effect the analysis had on the decisionmakers, and deemed Plaintiff unfit to continue his medical studies. A procedural due process and disability discrimination lawsuit was then brought.

IV. **Argument**

    A. Leave to Amend Should Be Freely Granted

Fed.R.Civ.P. 15(a)(2) provides that "[t]he court should freely give leave [to amend] where justice so requires." The considerations are "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous

3

amendments, undue prejudice to the opposing party, and futility of amendments." *American Elect. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). *Accord Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Sixth Circuit decisions reflect "liberality in allowing amendments to a complaint." *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987). This liberal approach operates "to reinforce the principle that cases should be tried on their merits rather than on the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

Delay alone does not inflict undue prejudice, *Id.* at 639 n. 2; instead, there must be "at least some significant showing of prejudice to the opponent" if the motion is to be denied. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). Defendants lack "any evidence of significant prejudice" from the amendments Plaintiff has proposed. *Fisher v. Roberts*, 125 F.3d 974, 978–79 (6th Cir. 1997). *Accord Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

"Delay by itself is not sufficient reason to deny a motion to amend." *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994) (quoting *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). This action was commenced on November 16, 2017, and Plaintiff is seeking amendment three months later. In the *Report of Parties' Planning Meeting under Fed.R.Civ.P. 26(f) and LR 16.3(b)(3)*, Doc. #15, PageID #: 351 (Jan. 29, 2018), ¶ 8 stated, "The recommended cut-off date for amending the pleadings and/or adding additional parties is 30 days from filing of the signed Case Management Scheduling Order."

In the Civil Docket minute entry dated January 31, 2018, the Court noted that "Defendants advised the Court that they plan to promptly file a motion for judgment on the pleadings" and scheduled its filing, opposition, and reply dates. Then, the Court stated: "After

the motion is resolved, the Court will reschedule the Case Management Conference, if necessary, to set further deadlines." No Scheduling Order was signed. Thus, no deadline for amending the Complaint has been set.

    B.    <u>The Amendments Are Not Futile</u>

        1.    <u>Adding the Rehabilitation Act Claim Based on the Same Facts as the ADA Claim Relates Back to the Original Filing Date.</u>

The ADA and Rehabilitation Act have overlapping goals, standards, and remedies. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for . . . participation in programs or activities provided by a public entity." *Id.* at § 12131(2). A public entity explicitly includes a state or local government body or any instrumentality thereof. *Id.* at § 12131(1).

Section 504 of the Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794(a). The Rehabilitation Act, which was enacted prior to the ADA, applies only to programs, like NEOMED, receiving federal financial support. *Id.*

Both the ADA and the Rehabilitation Act prohibit intentional discrimination against a student with a known disability, and Plaintiff is alleging such discrimination. His amendments

5

spell out how his ADHD satisfies the definition of disability, and his original Complaint quoted at length from his treating physician and expert opinions on his disability in its unmitigated state.

Both the ADA and the Rehabilitation Act also prohibit discrimination against qualified disabled individuals by requiring those individuals receive "reasonable accommodations" to enable participation in programs or activities of a public entity. *See, e.g., Doe v. Woodford Cty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000). The ADA defines "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on" its operations. 42 U.S.C. § 12112(b)(5)(A). Under the Rehabilitation Act "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers[.] [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

The ADA and the Rehabilitation Act require NEOMED to offer reasonable accommodations for a student's known disability unless the accommodation would require "an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 436 (6th Cir. 1998) (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 413 (1979)). Additionally, an accommodation may be found to be unreasonable where a school establishes that the proposed modification will cause "undue hardship in the particular circumstances." *Shaikh v. Lincoln Mem'l Univ.*, 608 Fed.Appx. 349, 355 (6th Cir. 2015) (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012)) (internal quotation marks omitted).

6

Thus, NEOMED may be required to make "reasonable" modifications, but is not required to make modifications deemed "fundamental" or "substantial." *Kaltenberger*, 162 F.3d at 436 (quoting *Choate*, 469 U.S. at 300). Considering Plaintiff's ADHD and his prescribed medication during a process alleging his behavior constituted academic misconduct is a *de minimis* accommodation, while allowing him to take examinations where his symptoms could not be confused with cheating was once permitted by NEOMED without adverse incident and could be done again.

The Sixth Circuit is replete with decisions analyzing the ADA and Rehabilitation Act together due to their parallels. *See, e.g., Kaltenberger*, 162 F.3d at 435. Thus, *Thompson v. Williamson Cnty.,* 219 F.3d 555, 557 (6th Cir. 2000), held: "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together."

Citing *Ability Ctr. of Greater Toledo v. City of Sandusky,* 385 F.3d 901, 908 (6th Cir. 2004), the D.C. Circuit explained in *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1260-61 & n.2 (D.C. Cir. 2008), that "the courts have tended to construe section 504 *in pari materia* with Title II of the ADA, 42 U.S.C. § 12132, reasoning that these statutory provisions are "'similar in substance' . . . [and consequently] 'cases interpreting either are applicable and interchangeable.'" *Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir.1999)" (citation omitted). *McElwee v. County of Orange*, 700 F.3d 635, 640 & n.2 (2nd Cir. 2012), treated as "interchangabl[e]" Title II's "reasonable modifications" requirement and Title I's "reasonable accommodations" requirement.

Amendment to include a Rehabilitation Act claim could not, therefore, be futile because the ADA claim is not meritless. Futility is a ground for denying amendment, *Miller v. Calhoun*

*Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005), but the standard is if "the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.* (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

The Rehabilitation Act claim is predicated on "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The detailed factual allegations in the original and amended complaints are, for purposes of a motion to dismiss, accepted "as true and [the court must] determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted).

Plausibility is far surpassed. Defendants observed a student with ADHD exhibiting known symptoms of that disability and rushed to judgment that he was cheating. They adhered to their lay opinion of what was observed even though expert medical opinions contradicted their ignorant view. They refused to listen to or seriously consider physical evidence that negated cheating and a reliable statistical analysis that exposed blatant flaws in a professor's unreliable analysis that six identical answers established cheating. They attempted to launder the recollection of the unreliable analysis and excluded from evidence the reliable one. They then provided *ex parte* a false and misleading rendition of conversations with the treating doctor and experts. On these facts, it is probable, not merely plausible, that they decided Plaintiff was unfit

for medical studies because of his disability and avoided a robust procedure so that his dismissal would result.

The only prejudice Defendants might suffer is that sovereign immunity under the Eleventh Amendment is waived by NEOMED's receipt of federal funding for research and student grants. "States waive their Eleventh Amendment immunity with regard to Rehabilitation Act claims when they accept federal funds." *Martin v. Taft*, 222 F.Supp.2d 940, 957 (S.D. Ohio 2002) (citing *Carten v. Kent State Univ.,* 282 F.3d 391, 398 (6th Cir. 2002). This principle was firmly established in *Nihiser v. Ohio EPA,* 269 F.3d 626, 628 (6th Cir. 2001).

Allowing this amendment avoids the need to resolve a dispute over enforcing the ADA's explicit language reaching states. *See, e.g., Bennett–Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005). The law is settled that the ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia,* 546 U.S. 151, 159 (2006). Plaintiff has alleged intentional and irrational discrimination, including a failure to reasonably accommodate, which actually violates the Fourteenth Amendment even though individuals with a disability are not a suspect class and medical school education is not a fundamental right.

In *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 956 (11th Cir. 2005), a state university was sued under the ADA for failing to provide sign language interpreters and other auxiliary aids to hearing-impaired students or to ensure physical access for students with disability. Rejecting an Eleventh Amendment challenge, the Court began with the explicit congressional intent to abrogate sovereign immunity. *Id.* at 956-57 (citing 42 U.S.C. § 12202).

Then, applying the congruence and proportionality standards from *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Court found Congress had sought to enforce a "constitutional right to equality in education" that was "vital to the future success of our society," even though not a fundamental right. 405 F.3d at 957-58. A history of unconstitutional discrimination had been found by Congress. *See, generally, Tennessee v. Lane*, 541 U.S. 509, 524 (2004). States retained discretion to exclude students for reasons other than disability, and reasonable modifications were proportionate. 405 F.3d at 958-59.

Some authority disagrees, *see, e.g., Doe v. Board of Trustees,* 429 F.Supp.2d 930, 939 (N.D.Ill. 2006), but the weight of authority finds abrogation. *See Toledo v. Sanchez,* 454 F.3d 24, 40 (1st Cir. 2006); *Bowers v. National Collegiate Athletic Ass'n,* 475 F.3d 524, 550–53 (3rd Cir. 2007); *Constantine v. Rectors and Visitors of George Mason University,* 411 F.3d 474, 490 (4th Cir.2005); *Cunningham v. Univ. of New Mexico Bd. of Regents*, 779 F. Supp. 2d 1273, 1279 (D.N.M. 2011), *aff'd,* 531 Fed. Appx. 909 (10th Cir. 2013).

*United States v. Georgia*, 546 U.S. at 159, requires this abrogation measure to be applied "on a claim-by-claim basis" that considers whether the same conduct violated both the ADA and the Fourteenth Amendment and, if not, "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." The congruent and proportional standards are used. *Lane*, 541 U.S. at 531. The weight of authority supports Plaintiff's ADA claim against NEOMED. Consequently, Defendants cannot even demonstrate prejudice, let alone cognizable or significant prejudice, from having their sovereign immunity abrogated by amendment to state a Rehabilitation Act claim.

Both the ADA and the Rehabilitation Act are governed by a two-year statute of limitations. *McCormick v. Miami Univ.*, 693 F.3d 654, 662-64 (6th Cir. 2012). Pursuant to

10

Fed.R.Civ.P. 15(c)(1)(B), an amended complaint may relate back when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Thus, an amendment does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

Even with the proposed amendments on the purpose and effect of choosing an academic, rather than disciplinary, process on the accusation of cheating, the amendments conform almost identically in time and type to the transaction already before the Court. There is hardly any change in the factual allegations, certainly none that differ in time and type from the claim originally brought.

        2.        While State Instrumentalities May Not Be Named under 42 U.S.C. § 1983, State Officials May Be Named under *Ex parte Young* to Prevent Ongoing Constitutional Violations and Individuals May Be Sued in their Personal Capacities.

*Ex parte Young* empowers a federal court to issue prospective relief compelling a state official to comply with federal law because "it is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *S & M Brands, Inc. v. Cooper,* 527 F.3d 500, 507–08 (6th Cir. 2008). NEOMED Trustees, its President, and its Chief Student Affairs Officer have "some connection with the enforcement of the act," *Ex parte Young,* 209 U.S. at 157, of dismissing Plaintiff from his medical studies without procedural due process and due to disability discrimination. *See also Floyd v. Cty. of Kent,* 454 Fed.Appx. 493, 499 (6th Cir. 2012) ("The state official sued [ ] must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains.").

Plaintiff has effectively been banished from pursuing his medical studies, and only prospective declaratory and injunctive relief against NEOMED officials can remedy that injury. Unless he is permitted to return to his studies with an expunged record and future accommodation, their violations will continue to deprive him of a liberty and/or property interest without due process and discriminate on the basis of his disability. Plaintiff's Complaint "'alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. 2003) (quoting *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

Damages are not, however, available from officials sued in their official capacity. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 n.1 (6th Cir. 2004) ("avoid[ ] this sovereign immunity bar by suing for injunctive or declaratory relief, rather than monetary relief") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)). Plaintiff is, though, seeking damages from Defendant Emerick by suing her in her personal capacity for her deprivation of procedural due process.

His continued enrollment in medical studies was both a property interest sounding in contract and a liberty interest in pursuing his career choice. The Fourteenth Amendment's Due Process Clause has been applied to denial of such enrollment. *See, e.g., Regents of U. Mich. v. Ewing*, 474 U.S. 214, 222–23 (1985).

The amendments include new paragraphs, 61-70, that delineate both how Defendants chose to use an academic professionalism or fitness process rather than a disciplinary one and the impact of that choice on both the procedural due process and disability discrimination claims. *Ewing* recognized that in the context of academic dismissals, courts "should show great respect

for the faculty's professional judgment" and "may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." 474 U.S. at 225. Thus, "[w]here dismissals are considered academic in nature, procedural due process does not require a hearing before a decisionmaking body either before or after the termination decision is made." *Fuller v. Schoolcraft Coll.*, 909 F.Supp.2d 862, 876 (E.D. Mich. 2012) (requiring only that the student is informed of the nature of the dissatisfaction and the final decision is "careful and deliberate").

In contrast, "[d]isciplinary dismissals, being more objective in nature and not dependent upon the analytical expertise of professional academicians," require higher standards of protection. *See Fenje v. Feld*, 398 F.3d 620, 625 (7th Cir. 2005). "The hearing, whether formal, informal, live or not, must be meaningful and must provide the accused with the opportunity to 'respond, explain, and defend.'" *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005). That includes the student's presence for all significant portions of the hearing. *Id.* at 635-36. Indeed, "some circumstances may require the opportunity to cross-examine witnesses"; "some circumstances . . . might [warrant disclosure of] the names of witnesses and a list of other evidence the school intends to present[.]" *Id.* at 636. Beyond that, while "due process generally does not require an appeal from a school's decision that was reached through constitutional procedures," *Id.* at 636, it must provide that safeguard when the lower-level hearing is so suspect.

The amendments are not futile because they allege that Defendants manipulated the characterization of cheating as academic, rather than disciplinary, precisely to avoid providing a robust process. Professionalism and fitness are "academic evaluations," *Al–Dabagh v. Case W.*

13

*Reserve Univ.*, 777 F.3d 355, 360 (6th Cir.), *cert. denied*, 135 S.Ct. 2817 (2015); exhibiting ADHD symptoms and being falsely accused of cheating are palpably distinguishable.

Unlike the student in *Al–Dabagh*, Plaintiff was accused of ***a single incident*** of cheating. His amendments allege that equating his ADHD symptoms with a lack of professionalism or fitness is the quintessence of disability discrimination, stereotyping all students with ADHD because they might exhibit such symptoms when their medication is changed or ineffective. Defendants' channeling of its accusation to academic, rather than disciplinary, must not stand because universities should not be afforded the simple expedient of characterizing disciplinary matters, to which robust procedural due process applies, as academic misconduct, to which heavily diluted process suffices.

The amendments also clarify that NEOMED is not being named under 42 U.S.C. § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. As a state university, NEOMED may not be joined under 42 U.S.C. § 1983. *Nuovo v. The Ohio State Univ.*, 726 F. Supp. 2d 829, 850 (S.D. Ohio 2010). Obviously, Defendants suffer no prejudice from this clarification or from eliminating the personal capacity lawsuit against Defendant Gershen and the extensive legal argument in the description of the causes of action.

Personal involvement in the alleged constitutional violation is a requirement for individual liability under 42 U.S.C. § 1983. *See, e.g., Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). The allegations in the original complaint and the amended complaint do not display a sufficient affirmative link between the procedural due process violations and University President Gershen's actions.

**V.    Conclusion**

14

Amending a complaint this early in an action is both appropriate and responsible. The legal standards under Fed.R.Civ.P. 15 have been satisfied, and claims that should be vindicated at a jury trial have been brought. Plaintiff's motion should, therefore, be granted.

Respectfully submitted,

By: */s/ John S. Marshall*
John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed with the Court on this 16th day of February, 2018 using the CM/ECF system, which will send notification of such filing to all counsel of record. Parties may access this filing through the court's filing system.

By: */s/ John S. Marshall*
John S. Marshall (0015160)