## Declaration of Caroline Ramos, M.D.

I, Dr. Caroline Ramos, hereby declare as follows:

1. I am a primary care physician at Columbus Internal Medicine.

2. For approximately 20 years I have served as the primary care physician for Jami Cheng and John Endres.

3. On April 13, 2015, I also began caring for their son, Julian Endres ("Mr. Endres"). I was specifically asked by his parents at that time to care for his attention deficit hyperactivity disorder (ADHD) and his weight loss. I spent an hour with Mr. Endres that day and conducted a thorough interview of him.

4. Between April 13 and August 27, 2015, I met with Mr. Endres three times.

5. Mr. Endres and his parents informed me that he had taken Ritalian to treat his ADHD from a young age. Ritalin is a stimulant.

6. During the summer of 2015, Mr. Endres stopped taking Ritalin. His appetite returned and his weight improved.

7. On August 5, Mr. Endres presented to me to discuss alternatives to Ritalin.

8. That day, I prescribed him Strattera, a non-stimulant medication used to treat ADHD.

9. Mr. Endres reported to me for a follow-up on August 27. He reported that since starting on Strattera he was feeling better, maintaining his weight, and was able to focus. He reported no side effects.

10. On October 12, I was contacted by Mr. Endres's parents and informed that he had been accused of academic misconduct at his medical school.

11. That same day, they sent me a copy of a video of Mr. Endres taking the test on which he was accused of cheating. John Endres brought a jump drive to my office which contained the video.

12. I viewed the video that day and noticed several behaviors by Mr. Endres, including fidgeting, yawning, and the need to shift positions, which could have been caused by his ADHD.

13. In order to provide an objective assessment of Mr. Endres's actions in the video, I did not speak with him between the time I learned of the accusations against him and the time I viewed the video.

14. On October 13, I submitted a letter on Mr. Endres's behalf to Dr. Sandra Emerick, the Chief Student Affairs Officer at Northeast Ohio Medical University, explaining my history of care for Mr. Endres and my observations after watching the video of Mr. Endres taking the test in question.

15. On October 29, around 5:30 p.m., I received a call from Dr. Emerick about the letter I had submitted.

16. Recently, I have been shown a memo drafted by Dr. Emerick addressed to Dr. Elisabeth Young, who is identified in the memo as the "CAPP Executive Review Chair." The memo is dated November 2, 2015.

17. The memo purports to summarize the contents of my telephone conversation with Dr. Emerick, but it misrepresents the contents of our call in several ways.

18. The memo contains the following passage:

> Dr. Ramos only met with Julian three times in total. She did not meet with him or speak with him before writing the

2

> letter submitted to CAPP phase 2. She simply prepared the
> letter based upon the materials Julian's parents sent her via
> jump drive regarding Julian's CAPP case.

That passage appears to attack the basis on which I rendered the opinions in my October 13 letter. The passage contains several false or misleading representations.

19. The passage states that I "only" met with Mr. Endres three times. Those meetings, however, occurred in a span of just over four months. Three meetings in a four-month span exceeds the rate at which I meet with most of my patients.

20. The passage then states that I did not meet with Mr. Endres prior to submitting my October 13 letter. But as noted above, I met with Mr. Endres three times in 2015, the most recent occurring on August 27, just one month before the incident at issue. My statement that I did not meet with Mr. Endres prior to writing the letter was not a caveat intended to qualify the opinion I was rendering; its import was to convey that I had chosen to view the video before speaking to Mr. Endres so that my view of the video would not be tainted by his explanation of his actions.

21. The final sentence of the passage concludes by stating that I "simply prepared the letter based upon the materials Julian's parents sent [me] via jump drive." That is false, and it is not something I ever conveyed to Dr. Emerick. I prepared the letter based upon (1) my professional care for Mr. Endres, which spanned a time when he was using Ritalin, then using no ADHD medication at all, and finally when he was using Strattera; and (2) what I observed when I watched the video. This final sentence of the passage suggests that the views I expressed in my letter were somehow biased by information I received from Mr. Endres's parents. That, too, is false.

3

22. The November 2 memo later states that I "mentioned that [I] could see how the constant viewing of the peer's computer to his right might be viewed as cheating." It takes that statement of mine out of context. What I told Dr. Emerick is that, while the video might appear to be evidence of cheating, it is also consistent with the behavior of someone with ADHD.

23. In my opinion, Dr. Emerick's November 2 memo does not faithfully memorialize the contents of our telephone call.

I hereby affirm that the foregoing is based on my personal knowledge and is true to the best of my knowledge.

DATED: 8/5/2016    BY: _Caroline D. Ramos_ MD
Caroline Ramos, M.D.

4