# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **J. ENDRES** | : | Case No. 5:17-cv-2408 |
| | : | |
| **Plaintiff** | : | Judge Lioi |
| | : | |
| v. | : | Magistrate Judge Limbert |
| | : | |
| **NORTHEAST OHIO** | : | |
| **MEDICAL UNIVERSITY, et al** | : | |
| | : | |
| **Defendants** | : | |

## REPLY IN SUPPORT OF MOTION TO DISMISS

**MICHAEL DEWINE (0009181)**
**Ohio Attorney General**
TODD R. MARTI (0019280)
ANTHONY J. FARRIS (0055695)
Assistant Attorneys General
Office of the Ohio Attorney General
Education Section
30 E. Broad Street, 16th Floor
Columbus, OH 43215
Phone:  (614) 644-7250
Fax:  (614) 644-7634
Email:  todd.marti@ohioattorneygeneral.gov
*Counsel for Defendants*

1

**TABLE OF CONTENTS**

A.  Endres' claims are time barred ...............................................................................3

    1.  Defendants' statute of limitations defense can be resolved via this motion ..................3

    2.  The fact that the October 21 decision was subject to reversal is immaterial ................4

    3.  The fact that Endres asserts a due process claim is immaterial .....................................5

B.  Endres has not made out a due process violation .................................................6

C.  Endres has not rebutted Dr. Emerick's presumed immunity ...............................7

    1.  Endres has identified no precedent clearly establishing his right to have his dismissal evaluated through disciplinary, rather than academic, process .....................................7

    2.  Endres has identified no precedent clearly establishing that it was unreasonable for Dr. Emerick to rely on Endres' waiver of disciplinary process .................................10

**A.      Endres' claims are time barred.**

The Defendants' motion explained that Endres asserts two claims: disability discrimination claims under the Rehab Act and the ADA, and a derivative due process claim via 42 U.S.C. §1983. It further explained that those claims are controlled by two year statutes of limitation, and that the question of when the claims accrued is one of federal law. It pointed out that the discriminatory act alleged—the decision to dismiss Endres in spite of his disability based explanation for his conduct—occurred on October 21, 2015, more than two years before this case was filed on November 16, 2017. It therefore concluded that Endres' claims are time barred. Doc. No. 25, pp. 11-13, PageID 494-496.

Endres does not dispute our description of his claims or of the applicable statutes of limitations. He likewise does not dispute the dates that the various actions were taken. Instead, he raises three arguments as to why his claims were timely filed. None survive scrutiny.

**1.    Defendants' statute of limitations defense can be resolved via this motion.**

Endres' suggestion that statute of limitations defenses should not be resolved through a Rule 12 motion overstates the holdings of the cases he relies upon. *See* Doc. No. 27, p. 47, Page ID 905.[1] While it is true that limitation defenses cannot be resolved on the pleadings in some cases, that is not a universal rule. "[S]ometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case … dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. United States Steel Corp*., 676 F.3d 542, 547(6th Cir. 2012). In this case the amended complaint affirmatively sets forth the dates of the actions underlying the Defendants' limitation defense. There is no procedural barrier to ruling on that defense.

---

[1] All citations to pages within Doc. No. 27 are to the page numbers assigned by the Court's ECF system, rather than to Endres' internal pagination of that memorandum.

3

### 2. The fact that the October 21 decision was subject to reversal is immaterial.

Endres' primary argument is that his claim did not accrue until the CAPP issued its decision on remand because NEOMED's student handbook delays the execution of a dismissal sanction until all appeals are exhausted. *See* Doc. No. 27, pp. 42-43, PageID 900-901. That argument is flawed in two independently fatal respects.

First, it overlooks the principle that such non-federal provisions are immaterial. The question of when a claim accrues is controlled by federal law. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Circuit precedent therefore holds that questions about a decision's finality under state law are immaterial. For example, the plaintiffs in *Kessler v. Board of Regents*, 738 F.2d 751 (6th Cir. 1984), and *Haeberle v. Univ. of Louisville*, 90 Fed. Appx. 895 (6th Cir. 2004), argued that state laws that prevented the disputed decisions from becoming final prevented their federal claims from accruing, but the Circuit disagreed. As *Haeberle* put it, "federal law and not state law is relevant for the purpose of characterizing a [federal] claim." 90 Fed. Appx. at 900; *Kessler*, 742 F.2d at 755. The Handbook is not a federal law, so its language does not control the federal question of when Endres' claim accrued.

Second, Endres' argument overlooks circuit precedent on the effect of non-final decisions. Endres is not the first litigant to argue that his delay should be overlooked because of doubts about the finality of the disputed decision. The plaintiff in *Kessler* argued that the clock did not start running on her claim because pending proceedings cast doubt on the finality of the decision she challenged. The Circuit rejected that: "even if the Board had specifically stated in its June 30 letter that its decision was *not* final, it would have been sufficient to commence the running of the limitations period." 738 F.2d at 755-56 (emphasis in original). A similar argument was made and rejected in *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987). The

plaintiff pointed to a number of extensions as evidence that the disputed decision was not final enough for his claim to accrue, but the Circuit disagreed. It noted that an "equivocal" decision, indeed even one that "explicitly held out … the possibility" of a different outcome, was not enough to freeze the clock. *Id*. at 947.

### 3. The fact that Endres asserts a due process claim is immaterial.

Endres suggests, via a one sentence quote from *Xu v. Michigan State University*, 195 Fed. Appx. 452 (6th Cir. 2006), that the fact that he asserts a due process claim requires a different result. Doc. No. 27, p. 44, PageID 902. That argument fails on three levels.

First, Endres has not sufficiently developed the argument. Circuit precedent requires a party "to argue" an "issue beyond making a bare assertion." *Oakland Gin Co. v. Marlow (In re Julien Co.)*, 44 F.3d 426, 432 (6th Cir. 1995). Endres offers nothing more than a bolded quote from an unreported case. That is not enough to preserve whatever argument he is making.

Second, the unexplained assertion that he suffered "injury" from a procedural deprivation does nothing to save his disability discrimination claim. That claim is based on a substantive decision (to dismiss him for conduct he claims was disability driven), not the procedures used to reach that decision. The distinction between the disability discrimination and due process claims is further illustrated by the fact that they are based on different facts and distinct legal principles. The difference is also highlighted by the disconnect in terms of defendants; Rehab Act and ADA claims cannot be asserted against individuals, while §1983 claims cannot be asserted against NEOMED as a state entity. *Hiler v Brown*, 177 F.3d 542, 545-547 (6th Cir. 1999)(no individual liability on Rehab Act/ADA claims); *Savoy v. Univ. of Akron*, 2009 U.S. Dist. LEXIS 98642 (N.D. Ohio) *5 (State entities not subject to liability under §1983). More importantly, the allegedly discriminatory decision was made outside the limitation period through the Oct. 21

5

hearing; the Nov. 18 hearing was simply reconsideration (and affirmation) of that prior decision. In short, the supposed viability of Endres' due process claim is immaterial to the timeliness of his discrimination claim.

Third, to the extent that Endres is suggesting that all aspects of his due process claims are preserved because the last of his multiple hearings occurred within the limitations period, he overstates salvific effect of that last hearing. If it has any effect (and Defendants dispute that it does), it is only to save the portion of the due process claim based on matters occurring at that hearing, not to resurrect claims about earlier actions. That is illustrated by *Bell v. Ohio State University*, 351 F.3d 240 (6th Cir. 2003), and *Xu v. Michigan State University*, 195 Fed. Appx. 452 (6th Cir. 2006). In both cases students asserted due process challenges to actions occurring both inside and outside the limitation periods. The Circuit did not hold that the fact that *some* of the supposed due process violations occurred with the limitation period preserved *all* the claims. It instead held that only claims based on actions occurring within the limitation period were viable.

**B.     Endres has not made out a due process violation**.

The Defendants' motion explained that the Constitution requires minimal process before a student is dismissed for academic grounds. It showed how that process was provided here, and hence that due process requirements were met if Endres' dismissal was academic. Defendants further explained that his dismissal had two hallmarks of an academic dismissal established by Circuit and District precedent: a connection between the underlying conduct and the student's prospects for professional success and the fact that the university's standing policies classify the conduct as academic. Defendants therefore urged the Court to conclude that Endres' dismissal

6

was academic and that he was given all the process required. Doc. No. 24, pp. 14-17, Page ID - 497-500.

Endres' response is more remarkable for what it omits than what it contains. He does not dispute our summary of the process required before an academic dismissal or that such process was provided here. He does not dispute that District and Circuit precedents hold that a dismissal is academic if it involves conduct related to professional success or that honesty is such conduct. Nor does he dispute that Circuit precedent considers how the university's standing policies treat the underlying conduct and that NEOMED's policies classify cheating as academic misconduct.

Endres instead argues that conduct cannot be academic because it involved a single incident, rather than a pattern. Doc. No. 27, p. 53, PageID 911, but that ignores the precedents. *Stevenson v. Owens State Cmty. College*, 562 F. Supp. 2d 965 (N.D. Ohio 2008), involved a single incident, but still found the dismissal to be academic. *Id*. at p. 971. The same pattern is seen in *Corso v. Creighton University*, 731 F.2d 529, 532 (8th Cir. 1984), and *Garshman v. Pennsylvania State University*, 395 F. Supp. 912, 918, 921 (M.D. Pa. 1975). Both cases involved single instances of cheating and analyzed the dismissals as academic. Those precedents rebut Endres' assertion that conduct must be part of a pattern to be academic.

C. **Endres has not rebutted Dr. Emerick's presumed immunity.**

   1. **Endres has identified no precedent clearly establishing his right to have his dismissal evaluated through disciplinary, rather than academic, process.**

The Defendants' Motion explained that individual defendants are presumed to be protected by qualified immunity and that plaintiffs have burden of overcoming that presumption. It further explained that a plaintiff must identify reported precedent from the Supreme Court, the Sixth Circuit, or this District to rebut that presumption. Defendants noted out that the right Endres asserts was the right to have allegations of academic dishonesty evaluated through

7

disciplinary, rather than academic, process. It pointed out that cases elsewhere have reached conflicting conclusions and the absence of qualifying precedent resolving the matter in this circuit. Doc. No. 24, pp. 13, 17-20, PageID 496, 500-503.

Endres does not dispute the presumption of qualified immunity or our analysis of what types of precedents are necessary to rebut that presumption. He does not dispute that cases reach conflicting conclusions about how academic dishonesty matters should handled. He instead points to several cases he claims establish his right to disciplinary process. Those cases fall short.

Endres cites *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532 (1985), *Bd. of Curators v Horowitz*, 435 U.S. 78 (1984), and *Regents of the University of Michigan v Ewing*, 464 U.S.214 (1985), but none of those cases clearly establish his right to disciplinary process. *Loudermill* is an employment case, so it nowhere addressed the distinction between academic and disciplinary dismissals. Although *Horowitz* and *Ewing* acknowledged the distinction between academic and disciplinary dismissals, neither speak to which category academic dishonesty matters fit into. They therefore clearly established nothing on the question presented here. Indeed, their ambiguity on that question is reflected by the conflicting precedents that came down *after* they were decided. Compare *Corso v. Creighton University*, 731 F.2d 529, 532 (8th Cir. 1984); *Fenje v. Feld*, 398 F.3d 620, 624-625 (7th Cir. 2005); *McCann v. University of Buffalo*, 2016 U.S. Dist. LEXIS 76829 (W.D.N.Y), **32-36 (classifying such matters as academic) with *University of Texas Medical School v. Than*, 674 S.W.2d 839, 844 (Tex. App. 1994) (classifying them as disciplinary).

Nor does Endres identify any Sixth Circuit or Northern District precedent settling the question. He cites *Doe v Miami University*, __ F.3d __ (6th Cir. 2018); *Doe v University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017); *Doe v Cummins*, 662 Fed Appx. 437 (6th Cir. 2016),

8

*Flaim v. Medical College of Ohio*, 418 F.3d. 629 (6th Cir. 2005), and *Carney v University of Akron*, 2016 WL 4036726 (N.D. Ohio), but none of those cases help. All three *Doe* cases involved sexual misconduct and *Flaim* involved drug dealing, so they were indisputably disciplinary. The academic/disciplinary distinction was simply not an issue in those cases.[2] The distinction never came up on *Carney* because the university defendants argued that the procedures used satisfied the requirements for disciplinary dismissals, and hence never argued that the matter was academic. See Doc. No. 15, pp. 13-17, PageID 149-153, and Doc. No. 35, pp. 4-8, PageID 337-341, in N.D. Ohio case No. 5:15-cv-2309. And in any event, *Carney* could not clearly establish the law because it is an unreported decision. *Shreve v. Franklin County*, 743 F.3d 126, 136 (6th Cir. 2014).

The bottom line on this point is that while there are conflicting decisions elsewhere on whether academic dishonesty matters are properly treated as academic or disciplinary, Endres has identified nothing settling the question here.[3] He has therefore failed meet his burden of establishing that the right he asserts was clearly established. That leaves Dr. Emerick's immunity intact.

---

[2] Further, the *Doe* cases were all decided *after* the proceedings at issue here, so they could not have established the law at the time relevant to this case.

[3] Endres cites cases from other circuits and districts, but they do not clearly establish the law here. *Marsh v. Arn*, 937 F.2d 1056, 1069 (6th Cir. 1991) ("When there is no controlling precedent in the Sixth Circuit our court places little or no value on the opinions of other circuits in determining whether a right is clearly established"); *Andrews v. Hickman County*, 700 F.3d 845, 862, n.7 (6th Cir. 2012) (regarding out of district district court decisions)

### 2. Endres has identified no precedent clearly establishing that it was unreasonable for Dr. Emerick to rely on Endres' waiver of disciplinary process.

As noted in the Defendants' motion, courts across the country hold that students waive constitutional rights by agreeing to provisions in student handbooks that give public institutions authority to perform acts otherwise subject to constitutional restriction. *Medlock v. Trs. of Ind. Univ.*, 738 F.3d 867, 871 (7th Cir. 2013); *Commonwealth v. Neilson*, 666 N.E.2d 984, 987 (Mass. 1996); *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 473-474 (M.D. Pa. 2015).  And of particular interest here, the Sixth Circuit has held that it was reasonable for university officials to rely on such waivers, and that they are therefore protected by qualified immunity when they take action based on them. *Yoder v. Univ. of Louisville*, 526 Fed. Appx. 537, 546 (6th Cir. 2013). Endres explicitly agreed to handbook provisions explicitly giving NEOMED discretion to choose academic rather than disciplinary process, so Dr. Emerick could reasonably rely on those provisions and the cases just discussed to determine that Endres waived any right to disciplinary process. Doc. No. 24, pp. 20-22, PageID 503-505.  Endres argues that other cases make Dr. Emerick's reliance on those provisions and cases unreasonable. That argument fails for three reasons.

First, most of the cases Endres cites are completely inapposite. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532 (1985), *Bd. of Curators v Horowitz*, 435 U.S. 78 (1984), *Regents of the University of Michigan v Ewing*, 464 U.S.214 (1985), *Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010); *Doe v University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017); *Doe v Miami University*, __ F.3d __ (6th Cir. 2018); *Flaim v. Medical College of Ohio*, 418 F.3d. 629 (6th Cir. 2005), *Doe v Cummins*, 662 Fed Appx. 437 (6th Cir. 2016), and *Carney v University of Akron*, 2016 WL 4036726 (N.D. Ohio), nowhere addressed waiver. They do nothing to undermine this basis for Dr. Emerick's immunity.

10

Second, other of the cases Endres cites are too general and too old to trump the more specific, and recent, cases Dr. Emerick relies upon. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389 (1937), *Fuentes v Shevin*, 407 U.S. 67 (1972), and *Sambo's, Inc. v. City of Ann Arbor*, 663 F.2d 686 (6th Cir. 1981), dealt with waiver issues in different contexts. None dealt with the relationship of universities to their students and all are rather long in tooth. A university official could therefore reasonably rely on the more specific, and more recently decided, cases holding that students waive rights when they agree to more restrictive provisions in a student handbook. See *Anderson v. Creighton*, 438 U.S. 635, 640 (1987)(The law "must have been clearly established in a more particularized, and hence more relevant sense").

Third, the agreements in the cases Endres cites were far harsher than that involved here. The agreement in *Sambo's, Inc.* tried to impose an *absolute* limitation on commercial speech. *Fuentes* considered the seizure of household goods with *no* prior process. In contrast, the contract Endres agreed to authorized a choice between two procedural regimes that *both* provided substantial protections. The regime chosen provided Endres with advance notice of the accusation and evidence underlying the proceeding. Indeed, Endres' own communications show that he fully understood what was at issue. That regime allowed Endres to make multiple written submissions, each supported by reports/briefs from doctors and lawyers. It gave him three separate hearings where he was allowed to make extended arguments, present medical testimony, and address decision makers' questions. It gave him a successful interlocutory appeal. And it provided all of that before actually imposing any sanction. See Doc. No. 24, pp. 9-11. That contract was not nearly as harsh as those considered in the cases Endres cites, illustrating the disconnect between those cases and the matters at issue here. Those cases are therefore insufficient to rebut Dr. Emerik's presumptive immunity.

11

Respectfully submitted,

**MICHAEL DEWINE (0009181)**
**Ohio Attorney General**
*/s/ Todd R. Marti*
TODD R. MARTI (0019280)
ANTHONY J. FARRIS (0055695)
Assistant Attorneys General
Office of the Ohio Attorney General
Education Section
30 E. Broad Street, 16th Floor
Columbus, OH 43215
Phone: (614) 644-7250
Fax: (614) 644-7634
Email: todd.marti@ohioattorneygeneral.gov

**Certificate of Service**

The undersigned hereby certifies that a copy of the forgoing was served upon all counsel of record via the Court's ECF system this 20th day of March, 2018.

*/s/ Todd R. Marti*
TODD R. MARTI (0019280)

12