# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION (AKRON)

| | | |
|---|---|---|
| J. ENDRES, | . | **Civ. No. 5:17−cv−02408−SL** |
| Plaintiff, | : | JUDGE LIOI |
| v. | : | MAGISTRATE JUDGE LIMBERT |
| NORTHEAST OHIO MEDICAL UNIVERSITY, *et al.,* | : | |
| Defendants. | : | |

## JOINT MOTION TO SEAL PERSONAL EDUCATION AND MEDICAL RECORDS

As the Court is aware, the parties informally resolved this matter. A material term of settlement was the filing of a joint motion to seal personal education and medical records. The Court retained jurisdiction concerning matters relating to the memorialization of the settlement agreement and the parties' consent to such jurisdiction for purposes of deciding this motion. (Doc. 42). Accordingly, the parties hereby move, pursuant to the interests reflected in N.D. Ohio L.R. 5.2, which governs filing documents under seal and the process for storing electronically filed sealed documents, and the inherent power of this Court, that the personal education and medical records of Plaintiff Endres be sealed in both the paper and electronic files, specifically the portion of his student file located in Doc# 25, PageID ## 698-755 and Doc## 29-1 through 29-8, PAGE ID ##971-998, because the records contain detailed, confidential, and sensitive information and the public's need to know about his underlying disability will amply be served by access to descriptions in the Complaint and First Amended Complaint and the judicial opinions by this Court and the Sixth Circuit.

**MEMORANDUM IN SUPPORT OF PARTIES' JOINT MOTION
TO SEAL PERSONAL MEDICAL RECORDS**

**I.     Background**

Mr. Endres alleged denial of procedural due process and disability discrimination. Naturally, the allegations and documents included references to files from his education record and personal medical records. Discovery, motions practice, and a jury trial loomed when the parties reached an informal resolution. In the settlement agreement, NEOMED agreed to vacate the dismissal of Endres from NEOMED based on the alleged academic misconduct and agreed that the vacated dismissal is deemed to have never occurred.  A material part of that resolution was an effort to protect as much as possible under the circumstances further disclosure about files that are part of Mr. Endres' education records and personal medical records that should have been filed under seal in the first place.

In his original Complaint, ¶ 17, Doc#: 1, PageID ##: 3, 4, and its counterpart in his First Amended Complaint, ¶ 15, Mr. Endres alleged information about his disability and the treatment for that disability that he "was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), a neurodevelopment condition with a complex etiology, when he was six (6) years old, as evidenced by Plaintiff's medical records from Northwest Pediatric. Since he was first diagnosed, Plaintiff received effective treatment and was medicated correctly by Ritalin. From grades 1 through 12 of his education, Plaintiff went to his school's nurse's office at noon each day to take his afternoon dosage of Ritalin."  The personal education and medical records targeted by this Joint Motion to Seal contain far more detail.

In affirming in part and reversing in part, the Sixth Circuit, *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 285 (6th Cir. 2019), described his disability: "Endres has Attention Deficit Hyperactivity Disorder ('ADHD'). Since his diagnosis at age six, Endres has taken medication to

treat that condition, beginning with Ritalin, and he seemed to manage well." This Court, 2018 WL 4002613, at *3, did much the same: "Endres was diagnosed with Attention Deficit Hyperactivity Disorder ('ADHD') when he was six (6) years old, and took Ritalin to control the condition from grades 1 through 12." The complaints and decisions addressed his change in medication and its effects on him, including the fidgeting perceived, erroneously he alleges, by NEOMED as cheating. Again, the records themselves, going back to his tender years, are far more detailed.

II.     **Analysis**

"[C]ourts of this country recognize a general right to inspect and copy public records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597. "[P]ublic access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). That general right is anchored in the First Amendment and the common law, while the discretion to seal is reflected in such rules as N.D. Ohio L.R. 5.2, as well as the common law's concern for privacy and the inherent power of every court. *Nixon,* 435 U.S. at 598 ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.").

The general right is not, moreover, an absolute right. *Nixon*, 435 U.S. at 598. Instead, the general right is counterbalanced when "the public's right of access is outweighed by competing interests." *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The public is adequately protected when it receives notice from an order of the Court that a motion to seal is being considered; the Court must "docket it 'reasonably in advance of deciding the issue.'" *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988), (quoting *In re*

*Knight*, 743 F.2d at 235). In that decision, the Court "must consider less drastic alternatives to sealing and, if it decides to seal documents, must 'state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing.'" *Id.* (quoting *In re Knight Publ'g Co.*, 743 F.2d at 235).

That fact that the parties are jointly moving to seal is not determinative. "A movant's obligation to provide compelling reasons justifying the seal exists even if the parties themselves agree the filings should be sealed." *Harrison v. Proctor & Gamble Co.*, No. 1:15-CV-514, 2017 WL 11454396, at *1–2 (S.D. Ohio Aug. 11, 2017) (citations omitted). Careful judicial deliberation is still required. *P & G v. Bankers Trust Co.*, 78 F.3d 219, 222, 225 (6th Cir. 1996). "The interest [justifying nondisclosure] is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016) (quotation marks omitted).

Personal medical records, especially those of minors, have been sealed because the balancing so favors confidentiality and the descriptions in the complaints and decisions suffice to serve the public interest. *See, e.g., Mears v. Atl. Southeast Airlines, Inc.*, No. 5:12-CV-613-F, 2014 WL 5018907, at *3, 2014 U.S. Dist. LEXIS 142571 at *7 (E.D.N.C. Oct. 7, 2014) ("Courts have repeatedly held that minors' privacy interests in medical and financial information . . . overcome the common law right of access in granting motions to seal."); *Stokes v. Gramham*, No. 5:10-CV-296-F, 2010 WL 3834543, at *1, 2010 U.S. Dist. LEXIS 105200 at *1 (E.D.N.C. Sept. 30, 2010) (sealing plaintiff's medical records); *Landau v. Lamas*, No. 3:15-CV-1327, 2018 WL 3126396, at *1–2 (M.D. Pa. June 26, 2018) ("[I]n the exercise of our discretion we find that sufficient grounds exist to seal this document to guard against further risk of embarrassment or unnecessary invasion of the plaintiff's privacy in health-related matters.").

Even memoranda and exhibits supporting or opposing summary judgment will be redacted and the personal medical records sealed.  *See, e.g., Ganzzermiller v. Univ. of Maryland Upper Chesapeake Med. Ctr.*, No. CV CCB-16-3696, 2019 WL 4751457, at *10 (D. Md. Sept. 30, 2019) ("[T]o afford appropriate consideration to the First Amendment right of access to documents filed in connection with a summary judgment motion, the court will order the parties to file redacted versions of their motions, memoranda, and exhibits, maintaining under seal only demonstrably confidential personal medical information entitled to protection.").

The First Amendment context does not preclude sealing because "[t]he need to protect medical privacy qualifies as a 'compelling reason.'" *Abbey v. Hawaii Employers Mut. Ins. Co.*, 2010 WL 4715793, *1 (D. Hawaii 2010).  Accord *Lombardi v. TriWest Healthcare Alliance Corp.*, 2009 WL 1212170, *1 (D. Ariz. 2009) (allowing defendant to file under seal exhibits containing "sensitive personal and medical information") (citing *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).

The "strong presumption in favor of openness" for court filings, *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983), imposes "a heavy" burden on the parties.  *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). While "the public is entitled to assess for itself the merits of judicial decisions," and "has an interest in ascertaining what evidence and records the District Court [has] relied upon in reaching [its] decisions," *Shane Group*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1181), the presumption is hardly a conclusive one.

The key point is that the parties "show why [compelling] reasons outweigh the public interest in access to [the] records [in question] and [demonstrate] that the seal is narrowly tailored to serve that reason." *Kondash v. Kia Motors A., Inc.*, 767 Fed.Appx. 635, 637 (6th Cir.

2019) (quoting *Shane Group*, 825 F.3d at 305-06).

To be clear, the parties recognize that "official records and documents open to the public are the basic data of governmental operations." *Mueller v. Raemisch*, 740 F.3d 1128, 1135–36 (7th Cir. 2014).  They are not moving to seal the complaints or the opinions: "Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible." *Id.* (citation omitted).  Of course, the Sixth Circuit decision has already been officially published, and this Court's decision has been available through online services.

For example, *Bailey v. Wexford Medical Service*, 2014 WL 4541266, *6 (D. Md. Sept. 10, 2014), distinguished between medical information which supplied the bases for its merits opinion and other medical information which was protected by sealing: "In order to narrowly tailor the denial of access to serve Bailey's compelling interest in not making public a large amount of medical information unrelated to his claims, the court grants Wexford's motion to seal as to the medical records, but denies the motion as to both Wexford's memorandum in support of its motion to dismiss or, in the alternative, motion for summary judgment, and Dr. Ottey's affidavit."

Mr. Endres' personal medical records are no "more than tangentially related to the merits of a case," *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016), because the parties have not disputed that Mr. Endres has ADHD and received medications for it. The records showing that history since age six tell very little about the alleged wrongdoing. *See, e.g.*, Doc #25 Page ID ## 713-724, DOC #29-6 Page ID# 979-981, Doc #29-7 Page ID# 982-985) Thus, the medical information "concerns matter of little legitimate public interest." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3rd Cir. 1994).

Illustrating this dynamic is *Thomas v. Nationwide Children's Hospital*, 882 F.3d 608, 610 (6th Cir. 2018), where "the public interest in the records at issue [was] *de minimis*." Medical records of infants revealed why the hospital suspected child abuse, but the case was decided on the ground the hospital had not been a state actor subject to constitutional restraints. Disclosure was gratuitous and would have fed only the public's morbid curiosity.

In the short period since the Sixth Circuit rule, its decision has already often been cited, a clear indication of the existence of public interest in the holding and its bases. For example, *Patel v. Texas Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019), distinguished *Endres* because the student with a learning disability who was accused of academic misconduct there brought a substantive, rather than procedural, due process claim.

On the statute of limitations issue, *Ingram v. Tennessee Dep't of Health*, No. 3:17-CV-01565, 2019 WL 4727641, at *9 (M.D. Tenn. Sept. 27, 2019), relied on *Endres*: "Similarly here, the Court finds that Plaintiff's constitutional claims did not accrue and his time begin to run until the Chancery Court decision on September 17, 2018." More generally, *Endres* has been cited as recent authority on the statute of limitations under 42 U.S.C. § 1983. *Fletcher v. Doe*, No. 3:19-CV-495, 2020 WL 348558, at *2 (N.D. Ohio Jan. 21, 2020).

On the qualified immunity issue, *Endres* has also been cited as a source of recent authority. *Doe v. Baum*, No. 16-13174, 2019 WL 4809438, at *6 (E.D. Mich. Sept. 30, 2019); *Lawrence v. Pelton*, No. 1:17-CV-289, 2019 WL 5703384, at *7 (W.D. Mich. Sept. 16, 2019). It was dispositive on whether a student had a right to cross-examination in an arguably academic rather than disciplinary context. *Doe v. Haas,* No. 19CV0014DRHAKT, 2019 WL 6699910, at *11–12 (E.D.N.Y. Dec. 9, 2019).

In bringing this action Mr. Endres realized that his privacy had to be sacrificed in order to

seek vindication for his rights.  Unnecessarily requiring a greater sacrifice disserves civil rights law enforcement.  *See, e.g., Peterson v. Reinke*, No. 1:14-CV-00477-CWD, 2017 WL 1138135, at *3 (D. Idaho Mar. 27, 2017) ("The Court also recognizes that Plaintiff has an interest in keeping his mental health records private, and that he should not have to sacrifice all his privacy rights to bring a civil rights suit alleging unconstitutional government conduct.").

With the advent of search engines and the Internet, though, his personal medical history could be accessed throughout the world and put to nefarious uses from identity theft to extortion.  Less dastardly invasion of his privacy could be done by prospective employers even though the Americans with Disabilities Act explicitly restricts pre-employment inquiries, 42 U.S.C. 12112(d)(2) (Except for the ability to perform job-related functions, "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.").

Apart from litigation NEOMED anticipates that student medical information  will be protected from disclosure under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d *et seq.*, and its Ohio counterpart and privileges.  HIPAA is a federal law that seeks to ensure the security and privacy of health information. *Wade v. Vabnick-Wener, 922* F.Supp.2d 679, 687 (W.D. Tenn. 2010). The enactment of HIPAA confirmed a "strong federal policy in favor of protecting the privacy of patient medical records." *Law v. Zuckerman*, 307 F.Supp.2d 705, 711 (D. Md. 2004).  Ohio's policy is even stronger. *Turk v. Oiler*, 732 F.Supp.2d 758, 770-71 (N.D. Ohio 2010).

Likewise,  Endres' student records are protected from disclosure under the Family Education Rights and Privacy Act (FERPA). The Sixth Circuit has confirmed that the disciplinary files are part of the education record that is protected from disclosure under

FERPA.*U.S. v. Miami Univ.*,294 F.3d 797, 811 (6th Cir. 2002).. Like the medical records, keeping Endres' education records, which are protected from disclosure by federal law, accessible to the public will harm Endres' future educational and employment opportunities.

### III.     Conclusion

This Joint Motion should be granted and Doc# 25, PageID ## 698-755 and Doc## 29-1 through 29-8, PAGE ID ##971-998 sealed.  There is barely a discernible public interest in accessing Mr. Endres' personal medical and education records,  while the harm is pellucid.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

/s/ Tracy L. Turner                             /s/ Todd R. Marti – per email authorization

| | |
|---|---|
| TRACY L. TURNER (0069927) | TODD R. MARTI (0019280) |
| Rosenberg & Ball Co., LPA | Principal Assistant Attorney General |
| 205 South Prospect Street | RORY P. CALLAHAN (0072021) |
| Granville, Ohio 43023 | Principal Assistant Attorney General |
| 614-657-3454 (direct) | Education Section |
| 888-680-6796 (general) | 30 East Broad Street, 16th Floor |
| 866-498-0811 (fax) | Columbus, OH  43215 |
| | (614) 644- 7250 - Telephone |
| | (614) 644-7634 – Facsimile |
| | Todd.marti@ohioattorneygeneral.gov |
| *Counsel for Plaintiff* | Rory.callahan@ohioattorneygeneral.gov |
| | *Counsel for Defendants* |

### CERTIFICATE OF SERVICE

The foregoing *Joint Motion to Seal Personal Medical Records* was filed through the Court's Electronic Filing System on the 22nd day of June, 2020. All parties will be notified of this filing through the Court's Electronic Filing System.

/s/     Tracy L. Turner